James W. **PARKER**, Parker Chiropractic Resource Foundation, Inc., and Share International, Inc., Appellants,

v.

Patricia Shaw **PARKER**, Appellee.

No. 2–94–013–CV.

Court of Appeals of Texas, Fort Worth.

April 6, 1995.

Rehearing Overruled May 11, 1995.

---

10. The broad language used in 614(f) would seem to merit liberal application of the definitions.

Haynes & Boone, L.L.P., and David E. Keltner, Nina Cortell, LaDawn H. Conway, Fort Worth, McClure and McClure and Ann McClure, El Paso, Ray E. Green & Associates, P.C. and Ray E. Green, Jesse Green, Dallas, for appellants.

Fullenweider & Wardell, L.L.P. and Donn C. Fullenweider, Linda A. Hinds, Houston, Bishop, Payne, Williams & Werley, L.L.P. and Hershel R. Payne, Fort Worth, for appellee.

Before DAY, J., and B.J. STEPHENS, J., Sitting by Assignment.

## OPINION

DAY, Justice.

James W. Parker (Parker), Parker Chiropractic Resource Foundation, Inc. (Foundation), and Share International, Inc. (Share) appeal the trial court's disproportionate division of the community estate in favor of Patricia Shaw Parker (Shaw) and the awarding of attorney fees, actual damages, and punitive damages to Shaw. We reverse and modify in part, reverse and remand in part, and affirm in part.

In March 1983, Shaw filed for divorce from Parker and joined Parker's two closely held corporations, Foundation and Share. In 1988, both parties reached an invalid settlement, and the trial court entered a judgment. Parker, however, appealed the final judgment of the 1988 trial court. This court upheld the divorce, but held the settlement agreement was too indefinite to be enforceable and remanded the case for a property division.

The property division trial began in June 1993, and the trial judge signed the final judgment on October 12, 1993. The judgment awarded the following amounts to Shaw:

| | | |
|---|---|---|
| (1) | Shaw's share of community estate | $3,697,621 |
| (2) | Lost past and future contractual alimony | 633,153 |
| (3) | Damages for termination of Share benefit plan | 593,460 |
| (4) | Judgment against Share | 593,028 |
| (5) | Electronic Eavesdropping | 2,000 |
| (6) | Punitive damages | 1,000,000 |
| (7) | Shaw's attorneys fees, including appellate attorney fees | 1,395,627 |
| (8) | Less credit for previously paid amount | (1,850,000) |

## LOST PAST AND FUTURE ALIMONY

In points of error one, two, and three, Parker asserts the trial court erred in awarding Shaw $633,153 in actual damages for past and future contractual alimony based on breach of contract, fraud, or breach of a fiduciary duty. Parker agreed in the settlement agreement to pay Shaw $5,000 per month for ten years for a total of $600,000 in contractual alimony. Parker, however, only paid the contractual alimony for the first five months.

The trial court determined Parker breached the settlement agreement, committed fraud, and failed to fulfill his fiduciary duty. Based on these theories of recovery, the trial court awarded Shaw $633,153 in contractual alimony. Parker, however, asserts that the recovery of the contractual alimony could not be based on any of these three theories. We agree.

### (1) LAW OF THE CASE

■ In point of error one, Parker argues that our reversal in the first appeal of this case precluded the 1993 trial court from awarding the contractual alimony based on a breach of the settlement agreement because of the law of the case.

The "law of the case" doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages.... By narrowing the issues in successive stages of the litigation, the

law of the case doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency.... The doctrine is based on public policy and is aimed at putting an end to litigation.

*Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986) (citations omitted).

In the first appeal, we held that Parker and Shaw's settlement agreement did not constitute a complete agreement on which a final judgment could be based. *Parker v. Parker,* No. 2–88–170–CV (Tex.App.—Fort Worth, Nov. 22, 1989, writ denied) (not designated for publication). Furthermore, we held the settlement agreement did not constitute a valid contract allowing us to modify the original court's judgment because the settlement agreement lacked completeness and mutuality. *Id.* Therefore, the trial court erred by holding Parker breached the settlement agreement because we previously held the settlement agreement did not constitute a contract. We sustain point of error one.

### (2) FRAUD

■ The trial court, however, also based the award of contractual alimony on the theory that Parker fraudulently promised to settle the divorce in 1988.[1] Thus, in point of error two, Parker argues that the trial court erred by basing the award of contractual alimony upon a theory of fraud. We agree because Shaw's claim of fraud constituted nothing more than a claim for breach of contract.

[When t]he acts of a party may breach duties in tort or contract alone or simultaneously in both[, t]he nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone.

*Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494–95 (Tex.1991) (citing *Jim*

*Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986)). Here, Shaw's damages for the fraud relating to the settlement agreement equaled the amount of contractual alimony still owed under the settlement agreement. Furthermore, the only injury to Shaw by Parker's purported fraud was the loss of the benefit of the bargain of the settlement. Therefore, Shaw's claim of fraud constitutes nothing more than a claim for breach of contract. The settlement agreement, however, was not a valid contract. Therefore, no breach could have occurred. We sustain point of error two.

### (3) FIDUCIARY DUTY

Finally, the trial court also based its award of contractual alimony on the theory that Parker breached his fiduciary duty. In point of error three, Parker argues that the trial court erred by basing the award on a breach of fiduciary duty because any fiduciary duty relating to a settlement between Shaw and Parker terminated prior to the 1988 settlement agreement. We agree.

■ While marriage may bring about a fiduciary relationship, such a relationship terminates in a contested divorce when a husband and wife each have independent attorneys and financial advisers. *Bass v. Bass,* 790 S.W.2d 113, 119 (Tex.App.—Fort Worth 1990, no writ). Here, the settlement negotiations occurred between Shaw's CPA and Parker's CPAs. Neither Parker nor Shaw were present during the settlement negotiations. Furthermore, Shaw's three attorneys and CPA, and Parker's two attorneys and two CPAs were present when the settlement agreement was read into the record. Under these facts, no basis exists for the trial court to find a fiduciary duty owed by Parker to Shaw that Parker could have breached in the settlement. Therefore, we sustain point of error three. Because no basis exists for the trial court to award the $633,153 of contractual alimony, we reverse and modify the trial court's judgment to exclude the $633,153 of contractual alimony awarded to Shaw.

1. Shaw asserts that fraud occurred because Parker misrepresented his intent to settle, she relied on that misrepresentation, and she sustained damages as a result of the misrepresentation.

## COLLAPSE OF THE SHARE BENEFIT PLAN

In points of error four, five, six, seven, and eight, Parker asserts the trial court erred in awarding Shaw $593,460 in damages for Parker's collapse of the Share Defined Benefit Plan[2] because: (4) ERISA preempted and res judicata barred Shaw's claims against the Share; (5) no breach of contract occurred between Parker and Shaw; (6) Shaw failed to plead fraud; (7) Parker owed no fiduciary duty to Shaw; and (8) no evidence or insufficient evidence existed that Shaw incurred any actual damages, and if she did, those damages belonged to the community estate, not Shaw's separate estate. We disagree.

### (1) ERISA

■ In point of error four, Parker's claim of preemption by ERISA is without merit. A plan that does not cover employees, but only covers the owner of a business and his spouse is not subject to ERISA. 29 U.S.C.S. § 1002(3) (Law.Co-op.1990); 29 C.F.R. § 2510.3–3(b) & (c)(1) (1994). *See also Meredith v. Time Ins. Co.*, 980 F.2d 352, 358 (5th Cir.1993); *Cross v. Bankers Multiple Line Ins. Co.*, 810 F.Supp. 748, 751–52 (N.D.Tex. 1992). Here, the evidence at trial showed that no employees participated in the Share plan. Therefore, ERISA is inapplicable.

### (2) RES JUDICATA

■ Parker also claims in point of error four that res judicata barred the damages against Share because the 1988 trial court fully resolved the claims against Share, and Share did not appeal the 1988 trial court's judgment. Parker, however, did appeal the 1988 trial court's judgment. Generally, "when one party appeals from a judgment, a reversal as to that party will not justify a reversal as to other nonappealing parties." *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 446 (Tex.1989). The general rule, however, does not apply "when the rights of the appealing and nonappealing par-

ties are so interwoven or dependent on each other as to require a reversal of the entire judgment." *Id.* Here, the evidence clearly shows that Share, Foundation, and Parker are one and the same except for tax purposes. Furthermore, the claims by Shaw against Share and Foundation are completely interwoven with her claims against Parker for a disproportionate property division. Therefore, our previous reversal as to Parker was also a reversal as to Share and Foundation. Res judicata is thus inapplicable. We overrule point of error four.

### (3) BREACH OF AGREED ORDERS

■ In point of error five, Parker asserts the trial court erred in using the breach of the agreed orders as a basis to support the award of $593,460 for Parker's collapse of the Share plan. In April 1983, Parker and Shaw agreed to temporary orders which directed their behavior during the pendency of the litigation. Both Parker and Shaw signed these orders. The orders provided in pertinent part:

> It is ORDERED that Petitioner and Respondent are enjoined from:
>
> . . . .
>
> Making, or causing to be made, withdrawals from any profit sharing and/or retirement plan and/or insurance policy and/or any other fund over which Respondent and Petitioner can exercise control.
>
> . . . .
>
> All said agreed orders shall continue in force during the pendency of this suit or until further order of the Court.

Parker asserts the agreed orders could not be a contract because the trial judge in the 1988 trial found them to be void for contempt purposes based on TEX.R.CIV.P. 683. This, however, did not negate the contractual nature of the agreed orders between Parker and Shaw. Furthermore, Parker acknowl-

---

**2.** The Share Defined Benefit Plan provided for the payment to Parker of $9,344 per month for

life starting at age sixty-five, and then after his death, the same amount to Shaw for her life.

edged at trial that he executed the agreed orders and stated that he may have violated it on a few occasions. In fact, the record shows that Parker collapsed the Share Plan without notice to the court or Shaw with the apparent purpose to deprive Shaw of her vested survivor benefit. Based on these facts, sufficient evidence existed for the trial court to find that the agreed orders were a contract and that Parker breached this contract. We overrule point of error five.

Because the award of $593,460 could be based on a breach of contract theory alone, we will not discuss points of error six and seven which assert error by the trial court basing the $593,460 award on the theories of fraud and breach of a fiduciary duty.

### (4) LEGAL AND FACTUAL SUFFICIENCY

■ In point of error eight, Parker argues that no evidence or insufficient evidence exists to show that Shaw suffered any actual damages from the collapse of the Share plan. In determining a "no evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex.1992); *Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex. 1992); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. *Browning Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 928 (Tex.1993).

■ An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all the evidence in the case in making this determination and, if reversing, to detail that evidence in the opinion. *Jaffe Aircraft Corp. v. Carr,* 867 S.W.2d 27, 29 (Tex.1993).

■ At trial, three experts testified on the effect of the collapse of the Share plan and the resulting damages to Shaw. Parker called two of these experts, and Shaw called the other. Thus, both sides presented exhaustive evidence on the damages to Shaw. We hold that sufficient evidence existed to support the trial court's award of $593,460 to Shaw for Parker's collapse of the Share plan.

### (5) COMMUNITY ESTATE

■ Additionally, in point of error eight, Parker argues that any damages from the collapse of the Share plan belonged to the community estate, not Shaw's separate estate. Parker, however, failed to present any authority for this argument, and in fact, presented only two sentences of so-called argument. Therefore, Parker waived this portion of point of error eight. TEX.R.APP.P. 74(f). We overrule point of error eight.

### EAVESDROPPING

In point of error nine, Parker asserts the trial court erred in awarding Shaw damages for electronic eavesdropping because: (1) the trial court erred in allowing Shaw's trial amendment on electronic eavesdropping; and (2) the statute of limitations barred Shaw's claim, or, in the alternative, the award was against the great weight and preponderance of the evidence. In point of error twelve, Parker asserts the trial court erred in striking his pleadings relating to the electronic eavesdropping for his use of the Fifth Amendment. Finally, in point of error twenty-three, Parker asserts the trial court's conclusion of law number 121 addressing the statute of limitations and the striking of Parker's pleadings is against the great weight and preponderance of the evidence.

### (1) FACTS

During trial, Shaw filed a trial amendment to include a claim for damages against Par-

ker for wiretapping her attorneys' office. Parker filed an answer to the trial amendment claiming the affirmative defense of statute of limitations. Additionally, he sought attorney fees to defend the claim. Shaw then filed a response to Parker's answer, but failed to allege either fraudulent concealment or the discovery rule to toll the statute of limitations. The trial court, however, struck Parker's answer to the trial amendment because it felt that Parker's use of the Fifth Amendment when asked about the wiretapping was an offensive use of the privilege.

## (2) TRIAL AMENDMENT

The first step in examining these three points of error involves making a determination of whether the trial court erred in allowing the trial amendment.

If evidence is objected to at the trial on the ground that it is not within the issues made by the pleading, ... the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits.

TEX.R.CIV.P. 66; *State Bar of Texas v. Kilpatrick,* 874 S.W.2d 656, 658 (Tex.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2740, 129 L.Ed.2d 860 (1994). A court may not refuse a trial amendment unless: (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face. *Kilpatrick,* 874 S.W.2d at 658; *Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938, 939 (Tex.1990). The burden of showing surprise or prejudice rests on the party resisting the amendment. *Kilpatrick,* 874 S.W.2d at 658. If the trial amendment is not mandatory, then the decision to permit or deny the amendment rests within the sound discretion of the trial court. TEX.R.CIV.P. 66; *Greenhalgh,* 787 S.W.2d at 939. In such a case, the court's decision to allow or deny a

trial amendment may be reversed only if it is a clear abuse of discretion. *Kilpatrick,* 874 S.W.2d at 658; *Hardin v. Hardin,* 597 S.W.2d 347, 349–50 (Tex.1980).

Here, Shaw alleged a new cause of action against Parker in the trial amendment for damages based on the electronic eavesdropping. Because the trial amendment involved a new cause of action, it would not be mandatory. Therefore, we must determine whether the trial court abused its discretion in allowing Shaw to file the trial amendment.

In determining whether a trial court abused its discretion, we must determine "whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion occurred. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). An abuse of discretion does not occur where the trial court bases its decision on conflicting evidence. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *Kirkpatrick v. Memorial Hosp. of Garland,* 862 S.W.2d 762, 776 (Tex.App.—Dallas 1993, writ denied). Furthermore, an abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Holley v. Holley,* 864 S.W.2d 703, 706 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

Generally, "[w]here the matter to be pleaded appears to have been known by the party seeking to amend and is not based on any newly discovered facts, an amendment should be denied." *Ohio Medical Products, Inc. v. Suber,* 758 S.W.2d 870, 872 (Tex. App.—Houston [14th Dist.] 1988, writ denied). *See also Amsav Group, Inc. v. American Sav. and Loan Ass'n,* 796 S.W.2d 482, 490 (Tex.App.—Houston [14th Dist.] 1990,

writ denied); *Trailways, Inc. v. Clark,* 794 S.W.2d 479, 492 (Tex.App.—Corpus Christi 1990, writ denied). Here, the evidence shows that up until immediately before the time of trial, every attempt by Shaw to follow up on the rumors of electronic eavesdropping resulted in denials, including one under oath, that any electronic eavesdropping ever occurred. Shaw, however, discovered new evidence confirming Parker's electronic wiretapping at the time of trial. Therefore, facts existed showing the discovery of new evidence which supports the trial judge's decision to allow the trial amendment. We hold the trial judge did not abuse his discretion in allowing the trial amendment.

### (3) OFFENSIVE USE OF THE FIFTH AMENDMENT

■ Because the trial court properly allowed the trial amendment, our next determination focuses on the striking of Parker's answer to the trial amendment. The trial court based its striking of Parker's answer to Shaw's trial amendment on the theory that Parker offensively used his Fifth Amendment right against self-incrimination when he refused to answer questions about the electronic eavesdropping. To find a waiver of the Fifth Amendment privilege against self-incrimination because of an offensive use of the privilege, a trial court must find three factors exist. First, the trial court must find the party asserting the privilege is seeking affirmative relief. Second, the trial court must find the privileged information, if believed by the fact finder, would probably be outcome. determinative. Third, the trial court must find disclosure of the privileged communication is the aggrieved party's only means of access to the evidence. *Trans-American Natural Gas Corp. v. Flores,* 870 S.W.2d 10, 11–12 (Tex.1994); *Republic Ins. Co. v. Davis,* 856 S.W.2d 158, 163 (Tex.1993) (orig. proceeding).

■ Shaw claims that Parker's assertion of the affirmative defenses and request for attorney fees in his answer to the trial amendment constituted an affirmative cause of action. We disagree. When a defendant asserts matters of a defensive nature, the defendant is not requesting affirmative relief under the offensive use of the privilege rule. *Davis,* 856 S.W.2d at 164. Here, Parker only asserted affirmative defenses, he did not seek affirmative relief in relation to the eavesdropping claim. Furthermore, his request for attorney fees in defending the claim does not constitute affirmative relief based on the claim itself. Therefore, the trial court erred in striking Parker's pleadings based on the offensive use rule. We sustain point of error twelve.

### (4) STATUTE OF LIMITATIONS AND THE DISCOVERY RULE

■ Although the trial court struck Parker's answer which pled the statute of limitations, the trial court made a finding that the statute of limitations did not begin to accrue until early summer 1993 based on the discovery rule. Parker asserts the trial court's finding on this issue was against the great weight and preponderance of the evidence. In reviewing a point of error asserting that an answer is "against the great weight and preponderance" of the evidence, we must consider and weigh all the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *Ames v. Ames,* 776 S.W.2d 154, 158–59 (Tex.1989), *cert. denied,* 494 U.S. 1080, 110 S.Ct. 1809, 108 L.Ed.2d 939 (1990); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). After considering the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt,* 159 Tex. 305, 320 S.W.2d 815, 816 (1959); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ Generally, the statute of limitations begins to run when the wrongful conduct occurs. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). If applicable, however, the discovery rule determines when

the plaintiff's cause of action accrues and the statute of limitations begins to run. *Id.* In essence, the discovery rule tolls the start of the running of the statute of limitations until "the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury." *Id.* The accrual of the cause of action, however, does not wait for the plaintiff's recognition that grounds exist for a lawsuit. *Arabian Shield Dev. Co. v. Hunt,* 808 S.W.2d 577, 583 (Tex. App.—Dallas 1991, writ denied).

■■■ For a court to apply the discovery rule, however, the party asserting it must affirmatively plead the discovery rule. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517–18 (Tex.1988); *Powers v. McDaniel,* 785 S.W.2d 915, 918–19 (Tex. App.—San Antonio 1990, writ denied). Shaw failed to plead the discovery rule. The evidence at trial, however, shows the application of the discovery rule was tried by consent. TEX.R.CIV.P. 67; *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 495 (Tex.1991); *Born v. Virginia City Dance Hall & Saloon,* 857 S.W.2d 951, 956 (Tex.App.—Houston [14th Dist.] 1993, writ denied). Therefore, we will address the applicability of the discovery rule to the statute of limitations in this case.

■■■ Here, the evidence shows that Shaw heard rumors in 1987 that Parker electronically bugged her attorneys' office. Shaw took the deposition of Sam Parker, the alleged installer of the electronic eavesdropping equipment, trying to confirm the rumor. Sam Parker unequivocally denied that any electronic eavesdropping occurred. Shaw then attempted twice to depose Donna Coughlin to confirm the rumors. Parker attempted to quash Coughlin's deposition by filing a motion for a protective order, but the trial court denied the motion and ordered Coughlin's deposition to be taken. Coughlin, however, failed to appear. Not until the 1993 trial did any evidence exist confirming that Parker electronically bugged Shaw's attorneys' office.

Based on Shaw's diligent investigation of the rumor of electronic eavesdropping without any possible proof that the electronic eavesdropping actually occurred until the 1993 trial, we hold that the great weight and preponderance of the evidence supports the trial court's finding that the statute of limitations did not begin to accrue until 1993 because of the discovery rule. We overrule point of error nine. Additionally, we overrule point of error twenty-three in part, but sustain it to the extent it refers to the trial court striking Parker's pleadings.

## PUNITIVE DAMAGES

In point of error ten, Parker asserts the trial court erred in awarding $1,000,000 in punitive damages because: (1) Shaw's nonstatutory claims lie in contract and punitive damages are not available for breach of contract; (2) the amount is grossly excessive and not reasonably related to the amount of actual damages; (3) the award violates TEX.CIV. PRAC. & REM.CODE ANN. § 41.007 (Vernon Supp.1995); (4) if Shaw's claims are tort claims, they are economic torts against the community estate so they cannot serve as a basis for punitive damages; (5) no legally or factually sufficient evidence exists to support the punitive damages; and (6) the punitive damage award violates the United States and Texas Constitutions.

Here, the 1993 trial court awarded the punitive damages for electronic eavesdropping only.[3] In fact, the trial court concluded in its findings of fact and conclusions of law that because the electronic eavesdropping constituted an intentional tort committed with malice by Parker, then punitive damages in the amount of $1,000,000 should be levied against Parker, Share, and Foundation.

### (1) PUNITIVE DAMAGES STATUTORY CAP

The trial court awarded Shaw actual damages of $2,000 for the electronic eaves-

---

**3.** Because of the trial court's basis for awarding punitive damages, we will only address those

subpoints related to the punitive damages award based on the electronic eavesdropping.

dropping based on TEX.CIV.PRAC. & REM.CODE ANN. § 123.004 (Vernon 1986). Section 123.004 also allowed the trial court to award the $1,000,000 of punitive damages for the electronic eavesdropping. Parker, however, argues that section 41.007 limits the amount of punitive damages the trial court can award at four times the amount of actual damages or $200,000, whichever is greater. TEX.CIV. PRAC. & REM.CODE ANN. § 41.007 (Vernon Supp.1995).

■ Section 41.007, however, applies to certain defined causes of action. TEX.CIV. PRAC. & REM.CODE ANN. § 41.002 (Vernon Supp.1995). The defined causes of action in section 41.002 do not include Chapter 123 causes of action. *Id.* §§ 41.002, 33.001. Therefore, the statutory cap of section 41.007 does not apply to punitive damages awarded under section 123.004. We overrule this subpoint.

### (2) EXCESSIVENESS OF THE PUNITIVE DAMAGES

■ Parker next complains the punitive damage award was excessive. No set rule or ratio between actual and exemplary damages, however, exists to determine whether the amount of exemplary damages was excessive. *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981). Factors we examine include: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; and (5) the extent to which conduct offends a public sense of justice and impropriety. *Id.* The ratio of actual damages to exemplary damages is just one factor to consider in determining whether an award of punitive damages is excessive. *See TXO Production Corp. v. Alliance Resources Corp.,* —— U.S. ——, ——, 113 S.Ct. 2711, 2721, 125 L.Ed.2d 366, 380 (1993) (Court held that disparity between amounts awarded as actual damages and as punitive damages is not a prime factor in determining excessiveness. The punitive damages were 526 times greater than actual damages in this case.).

One of the major purposes of awarding punitive damages in Texas is to punish and deter the wrongful conduct of the party. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 29 (Tex.1994). Because of the purpose to deter and punish, the net worth of the party becomes a major factor in determining the amount of punitive damages. *Id.*

■ In reviewing a punitive damage award, we can only vacate or suggest a remittitur if the punitive award is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.* at 30. Whether we reverse or affirm the punitive award, however, we must detail the evidence supporting the award in light of the factors set out in *Kraus,* 616 S.W.2d at 910. *Moriel,* 879 S.W.2d at 31.

■ Here, the trial court found, and we agree, that Parker's conduct of electronically bugging the office of Shaw's attorney constituted outrageous and reprehensible conduct. Parker electronically eavesdropped to invade Shaw's attorney-client privilege and Shaw's attorneys' work product privilege. Furthermore, his purpose was to hurt Shaw by learning what Shaw's attorneys and accountants knew, what they planned to do at trial, and how they planned to achieve Shaw's goal in this divorce and property division. Parker then attempted to conceal the fact that he electronically eavesdropped by exercising control over his employees to prevent them from telling what they knew, and in filing motions for protective orders when Shaw attempted to depose Coughlin. Furthermore, he assisted Coughlin in evading her deposition even after the trial court ordered her deposition to be taken. Parker showed constant and flagrant disregard for the law and for the rights of Shaw. This degree of indifference toward the law and the rights of Shaw justified the trial court's awarding of punitive damages. Furthermore, because of the nature of his actions and the degree to which this type of conduct must be deterred in the future, we hold the $1,000,000 punitive

award was not excessive based on Parker's total net worth.[4]

## (3) CONSTITUTIONALITY OF THE PUNITIVE DAMAGES

Parker next asserts the punitive damage award violates both the due process and equal protection provisions of the United States and Texas Constitutions and the excessive fines clause of the Texas Constitution. We disagree. The record clearly shows the amount of punitive damages awarded in this case was reasonable and the procedure to assess and review the award provided sufficiently meaningful and definite constraint on the trier of fact to make the award constitutional under the due process provisions of the United States and Texas Constitutions. *See Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 17–24, 111 S.Ct. 1032, 1043–46, 113 L.Ed.2d 1, 19–24 (1991); *TXO*, — U.S. at — – —, 113 S.Ct. at 2718–21; *Pennington v. Singleton*, 606 S.W.2d 682, 690 (Tex. 1980); *Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 686–87 (Tex.App.—Texarkana 1991, writ denied), *cert. denied,* — U.S. —, 113 S.Ct. 3037, 125 L.Ed.2d 724 (1993).

Parker also asserts the awarding of punitive damages violates the equal protection provisions of the United States and Texas Constitutions because Texas law provides no limits on punitive damages for the fraud claim at issue in this case, but places a limit on punitive damages for other claims. The trial court, however, awarded punitive damages for the electronic eavesdropping, not fraud. Therefore, Parker's equal protection argument is irrelevant to the punitive damages awarded here because no punitive damages were awarded for fraud.

■ Parker also asserts the punitive damages award violates the excessive fines clause of the Texas Constitution. An award of punitive damages, however, does not violate the excessive fines clause of the Texas Constitution provided the award accomplished its objective and does not shock the

public sense. *Pennington,* 606 S.W.2d at 690; *Fibreboard,* 813 S.W.2d at 686–87. Here, the punitive damage award for the outrageous conduct of Parker helps accomplish the objectives of deterrence and punishment, while not shocking the public sense. Therefore, the awarding of the punitive damages did not violate the excessive fines provision of the Texas Constitution. We overrule point of error ten.

## ACTUAL DAMAGES

In point of error eleven, Parker asserts the trial court erred in awarding Shaw $593,028 in actual damages because: (1) the trial court's plenary power over Share expired thirty days after the 1988 trial court's judgment because neither Share nor Foundation appealed the first trial court's judgment; (2) Shaw's claims were barred by res judicata; and (3) Shaw's claims were barred by the doctrines of payment and accord and satisfaction.

We overrule Parker's first two assertions because of our previous holding in this opinion that our reversal in the first appeal as to Parker was also a reversal as to Share and Foundation. In fact, our first decision only affirmed the dissolution of the marriage, but reversed all other matters about the division of property back to the trial court. *Parker v. Parker,* No. 2–88–170–CV (Tex.App.—Fort Worth, Nov. 22, 1989, writ denied) (not designated for publication). Thus, Parker's arguments of lost plenary power and res judicata are without merit.

■ Parker's assertion about payment and accord and satisfaction are also without merit because the evidence proved otherwise. On January 21, 1988, the trial court granted Shaw a $350,000 judgment against Share. Share paid Shaw $350,000 on February 12, 1988. The evidence, however, shows that the $350,000 payment by Share to Shaw was not for the amount owed by Share to Shaw, but instead was an advance to Parker for him to

---

4. The $1,000,000 award constitutes approximately 21% of Parker's total net worth. Parker's separate estate was approximately $1,263,448, Share's net worth was approximately $1,245,886, and Foundation's net worth was approximately $2,241,544.

partially satisfy an obligation to Shaw based on an oral agreement on January 21, 1988. In fact, Share treated the $350,000 payment to Shaw on its books as an advance to Parker. The trial court recognized Parker's attempt to deceive the court with this transaction and awarded Shaw $350,000 plus interest accruing at $162.47 per day for a total amount of judgment plus interest of $593,028 on September 1, 1993. Therefore, we overrule point of error eleven.[5]

## DIVISION OF THE COMMUNITY ESTATE

In points of error thirteen through nineteen, Parker asserts the trial court erred in its division of the community estate because: (13) it improperly valued the property for division; (14) it mischaracterized several assets as Shaw's separate property; (15) it awarded amounts to Shaw or the community estate for reimbursement from Foundation and Share; (16) it failed to award the community estate reimbursement for the funds spent to enhance the property on Medford Court; (17) it awarded Shaw amounts based on claims of alter ego and piercing the corporate veil; (18) it awarded attorney fees to Shaw; and (19) the overall effect of the division was to punish Parker. We overrule these points of error also.

## (1) VALUATION OF THE PROPERTY

In point of error thirteen, Parker asserts the trial court erred in valuing the property because: (1) it used 1988 values of property; (2) it failed to consider the encumbrance of the pledge in determining the value of the College land[6]; (3) it failed to consider the tax consequences in finding a breach of the alimony contract; (4) it used testimony of book value and the value of the real estate on tax appraisal rolls to find the fair market value of Share and Foundation; and (5) it failed to exclude the value of the personal goodwill of Parker in determining the value of Share and Foundation.

### (a) Use of 1988 Values

Parker asserts the trial court should only consider the valuation data as of the time of the division of the property, 1993, instead of the time of divorce, 1988, because we separated out the hearing on the divorce and division of the property.[7] Shaw, however, argues that the proper valuation date should be the date of the divorce, not the date of the property division. We disagree with both.[8] Instead, we hold the determination of whether to use the time of the divorce or the time of the division as the valuation date of an asset when the divorce and division of the property occur at different dates is in fact so specific that it should be left to the discretion of the trial judge to avoid the inequities that could result by making a bright line rule. Here, valuations existed from both dates, among others, and the trial judge decided to use the date of the divorce. Based on the facts of this case, we hold the trial judge did not abuse his discretion in valuing the land as of the date of divorce.

### (b) Encumbrance of the Pledge

Next, Parker claims the trial court erred by failing to consider the encumbrance of the pledge in valuing the College land. Parker, however, raises no argument or authority to support his subpoint. In fact, all he states is that the trial court did not consider the possibility of the encumbrance on the property created by the alleged pledge of the property

---

5. Parker fails to raise any other complaints about this damage award.

6. The College land involves land allegedly pledged to the Parker College of Chiropractic.

7. In our opinion of November 22, 1989, we held that Parker and Shaw were legally divorced in 1988, but we remanded the case to the trial court for a property division.

8. Based on our research, we find that the courts in Texas have yet to settle what date to use in determining the valuation of the property to be divided if the time of the divorce and property division are different.

to the College. This fails to meet the briefing requirements of Tex.R.App.P. 74(f), and thus Parker waives this point of error. *See Fredonia State Bank v. General American Life Ins. Co.,* 881 S.W.2d 279, 284 (Tex.1994); *Lakeway Land Co. v. Kizer,* 796 S.W.2d 820, 827 (Tex.App.—Austin 1990, writ denied).

### (c) Tax Consequences of the Alimony Contract

Parker also alleges the trial court erred in failing to consider the tax consequences when it awarded Shaw damages for his failure to pay the contractual alimony. Parker, however, again fails to present any legal authority to support his subpoint, therefore, no issue exists for this court to review. Tex.R.App.P. 74(f). *Id.*

### (d) Fair market value of Foundation and Share

■ Parker also alleges that no competent evidence existed on the fair market value of Share or Foundation because all valuations were based solely on the book values of the corporations. Competent evidence, however, existed for the trial court to determine the fair market value of Share and Foundation because it had the following valuations: (1) owner valuation by Parker; (2) several experts' testimony and exhibit evidence of the valuation; and (3) an inventory valuation admitted into evidence. Thus, competent evidence existed for the trial judge to assign values to the corporations.

### (e) Goodwill

■ Parker finally asserts the trial court erred by failing to exclude the personal goodwill of Parker in valuing the corporations. While personal goodwill is not a divisible asset upon divorce,[9] goodwill that exists separate and apart from a professional's personal skills, ability, and reputation is divisible upon divorce. *Keith v. Keith,* 763 S.W.2d

950, 952 (Tex.App.—Fort Worth 1989, no writ). It is unclear, however, whether the trial court considered the two types of goodwill in determining the value of the corporations. Parker's attempt to brief this alleged error provides no guidance to us of where evidence was presented that personal goodwill existed, the amount of personal goodwill, or that the trial court used personal goodwill in making its calculations. We are not under a duty to search the record to supplement and provide the necessary material to support Parker's assertion that the trial court used the personal goodwill of Parker in valuing Share and Foundation.[10] *See Stevens v. Stevens,* 809 S.W.2d 512, 513 (Tex.App.—Houston [14th Dist.] 1991, no writ). Therefore, we overrule point of error thirteen.

### (2) CHARACTERIZATION OF CERTAIN ASSETS

■ In point of error fourteen, Parker alleges the trial court improperly characterized the following three assets as separate assets of Shaw instead of community assets: (1) damages awarded to Shaw by the amendment of the Share plan; (2) $100,000 certificate of deposit (CD); and (3) the Jaguar. Parker, however, again inadequately briefed the argument on the damages awarded to Shaw based on the amendment of the Share plan by presenting no legal authority and nothing more than bold face assertions of impropriety by the trial court. Tex.R.App.P. 74(f). *See Fredonia,* 881 S.W.2d at 284; *Kizer,* 796 S.W.2d at 827. Therefore, Parker waived the first subpoint of point of error fourteen. Additionally, the evidence at trial supports the trial court's finding that the CD and the Jaguar were the separate property of Shaw. Therefore, we overrule point of error fourteen.

### (3) REIMBURSEMENT FROM FOUNDATION AND SHARE

In point of error fifteen, Parker alleges the trial court erroneously reimbursed Shaw

---

9. *Nail v. Nail,* 486 S.W.2d 761, 764 (Tex.1972).

10. The record consists of approximately 900 pages of transcript and an approximately 4,400 page statement of facts.

based on the concept of inadequate compensation of the community estate because: (1) the community estate received adequate compensation; (2) there was no competent evidence of the fair market value of the corporations; (3) there is no evidence that any value was the result of Parker's time, toil, talent or labor; and (4) the increase in retained earnings was a fair and reasonable increase. We overrule subpoint two based on our earlier discussion. Furthermore, we overrule subpoints one, three, and four because the trial court awarded Shaw damages from Foundation and Share based on alter ego, not reimbursement.[11] We overrule point of error fifteen.

### (4) COMMUNITY FUNDS USED ON MEDFORD COURT

In point of error sixteen, Parker asserts the community estate paid for improvements to Shaw's separate property and thus is automatically entitled to reimbursement. Parker, however, failed to provide any authority to support his assertions that an automatic right to reimbursement existed under these particular facts. TEX.R.APP.P. 74(f). *See Fredonia,* 881 S.W.2d at 284; *Kizer,* 796 S.W.2d at 827. Therefore, we overrule point of error sixteen.

### (5) PIERCING THE CORPORATE VEIL AND ALTER EGO

■ In point of error seventeen, Parker asserts the trial court erred in awarding Shaw damages based on the doctrines of alter ego and piercing the corporate veil. We overruled earlier in this opinion Parker's first two assertions under this point of error regarding the finality of the 1988 trial court's judgment as to Share and Foundation. Parker, however, also asserts in this point of error that the evidence is legally and factually insufficient to support the finding that Foundation and Share are the alter ego of Parker. After reviewing the evidence under both a no evidence and insufficient evidence standard, we find the evidence at trial clearly supports the trial court's decision to apply the alter ego doctrine to Share and Foundation.[12] Therefore, we overrule point of error seventeen.

### (6) ATTORNEY FEES

In point of error eighteen, Parker alleges that the trial court erred in awarding Shaw attorney fees because: (1) the trial court failed to allow credit for previous payments; (2) the trial court failed to segregate the fees among the various claims and parties; (3) Shaw was unsuccessful in the first appeal; (4) the appellate attorney fees were not properly conditioned on a successful appeal; and (5) there was no evidence or insufficient evidence to support the trial court's award of attorney fees.

(a) Previous Payments

■ Parker again failed to provide this court with sufficient record references to even confirm that the trial court did not take into account any attorney fees that Parker actually paid. In fact, his only record references in support of subpoint one are to the trial court's judgment and findings of facts and conclusions of law which showed the total amount due in attorney fees, and to several sentences out of the approximately 4,400 page statement of facts where testimony existed that Parker might possibly have paid some attorney fees in 1987. Did the trial court consider the possible payment in assessing the total attorney fees? Were these amounts included in the amount due in attorney fees? Were these amounts ever actually paid by Parker, and what were the exact amounts paid, if any? We have no duty to search the record to find the evidence necessary to support Parker's point of error. *See Stevens,* 809 S.W.2d at 513; TEX.R.APP.P. 74(f). Therefore, we overrule subpoint one.

(b) Segregation of Attorney Fees Award

■ The trial court's failure to segregate the attorney fees from the causes of

---

11. *See Zisblatt v. Zisblatt,* 693 S.W.2d 944 (Tex. App.—Fort Worth 1985, writ dism'd).

12. *See Zisblatt,* 693 S.W.2d at 950–52, for a discussion of the requirements to apply the alter ego doctrine and piercing the corporate veil.

action at trial does not automatically preclude the recovery of attorney fees. *Gill Savings Ass'n v. International Supply Co.*, 759 S.W.2d 697, 705–06 (Tex.App.—Dallas 1988, writ denied). In fact, if causes of action arise out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts, recovery of reasonable attorney fees may be awarded in connection with all claims even if some of the claims would not normally authorize recovery of attorney fees. *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex. App.—Dallas 1987, writ denied). Furthermore, segregation of fees is not required when the causes of action require proof of the same facts. *Paramount Nat'l Life Ins. Co. v. Williams*, 772 S.W.2d 255, 266 (Tex. App.—Houston [14th Dist.] 1989, writ denied). Therefore, because the causes of action here arise out of the same transaction and are so interrelated, we overrule subpoint two on all attorney fees other than the award of appellate attorney fees.

(c) Appellate Attorney Fees

■ Parker also asserts the trial court erred by awarding unconditional appellate attorney fees, and by awarding Shaw attorney fees for the first appeal in which Shaw was unsuccessful. Generally, a trial court cannot award unconditional appellate attorney fees as costs against one party. *E.g.*, *Smith v. Smith*, 757 S.W.2d 422, 426 (Tex. App.—Dallas 1988, writ denied) (DTPA cause of action). A trial court in a divorce case, however, can award attorney fees to either party as part of the property division based on the conditions and needs of the parties and all the surrounding circumstances. *Matthews v. Matthews*, 725 S.W.2d 275, 280–81 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). *See also McClure v. McClure*, 870 S.W.2d 358, 362 (Tex.App.—Fort Worth 1994, no writ). Because the award of attor-

ney fees in a divorce case can be part of the property division, the trial court can award them to either party, regardless of who is successful in the trial court or on appeal. *Matthews*, 725 S.W.2d at 280–81. "In this respect, divorce cases are substantially different from other actions where a claimant must succeed in order to recover attorney's fees either at trial or on appeal." *Id.* at 281.

■ It appears from the record, however, that the trial court did not award the attorney fees as part of the property division, but instead awarded them on the several causes of action claimed by Shaw. In fact, Shaw states in her brief in a later point of error, "The award of attorney fees resulted from diverse causes of action. Appellants' assumption that it is all attributable to division of the estate is groundless. Attorney fees are properly awarded based on the pled and proven causes of action." Because the attorney fees were not awarded as part of the property division, the trial court erred by making them unconditional. *Smith*, 757 S.W.2d at 426. Furthermore, we cannot modify the award making the appellate attorney fees conditional because Parker partially succeeded in this appeal. Therefore, we have no choice but to reverse and remand the award of appellate attorney fees to the trial court for a determination of the reasonable amount of appellate attorney fees to be awarded to Shaw in view of the fact that Parker was partially successful in this appeal, and to make a determination of an appellate attorney fee for Shaw should Parker unsuccessfully appeal to the Texas Supreme Court. *See id.*

(d) No evidence or Insufficiency of the Evidence [13]

■ Parker asserts that no evidence or insufficient evidence exists to support the amount of the award of attorney fees to Shaw.[14] The record shows, however, that

---

13. We have already stated the standard of review for a no evidence and insufficiency of the evidence point of error. We will not restate it here, but the same standard applies.

14. Because of our holding on appellate attorney fees, we will only address the evidence relating to the remaining attorney fees.

Shaw presented ample evidence of her fee contract, the fees incurred at trial, and that those fees were reasonable and necessary. Furthermore, the evidence shows that Parker's conduct during the divorce exacerbated Shaw's attorney fees. Therefore, we hold that sufficient evidence existed in the record to support the amount of trial court attorney fees awarded to Shaw. We sustain point of error eighteen on the appellate attorney fees, and we overrule point of error eighteen on the remaining attorney fees.

## EFFECT OF THE PROPERTY DIVISION

■ In point of error nineteen, Parker asserts the overall effect of the trial court's division of property punished Parker and did not effectuate a fair and equitable division of the community estate. Parker claims the errors in this case materially affect the trial court's just and right division of the property. We disagree. None of our reversals in this case affect the trial court's division of the community estate at all.[15] *See Jacobs v. Jacobs*, 687 S.W.2d 731, 731–32 (Tex.1985). Therefore, we overrule point of error nineteen.

## DUPLICATIVE DAMAGES

■ In point of error twenty, Parker asserts the trial court erred by awarding duplicative damages based on inconsistent theories of recovery which resulted in a double recovery of damages. When a tort action is tried with a divorce action, it is imperative that the trial court avoid awarding a double recovery. *Twyman v. Twyman*, 855 S.W.2d 619, 625 (Tex.1993).

When dividing the marital estate, the court may take into account several factors, including the fault of the parties if pleaded ... [h]owever, a spouse should not be al-

lowed to recover tort damages and a disproportionate division of the community estate based on the same conduct. Therefore, when a factfinder awards tort damages to a divorcing spouse, the court may not consider the same tortious acts when dividing the marital estate.

*Id.* Parker claims the following awards show Shaw received a double recovery: (1) awarding Shaw alimony and a portion of the community estate; (2) awarding Shaw the Share judgment and a portion of the community estate; (3) awarding Shaw the Share judgment and damages for termination of the Share plan; and (4) awarding Shaw a portion of the community estate and damages for the termination of the Share Plan. We disagree. Based on the evidence in this case and the trial court's basis for awarding the various damages, we believe the trial court neither awarded a double recovery nor wrongfully considered Parker's acts that served as a basis for the other damages in this case in dividing the community estate. Therefore, we overrule point of error twenty.

## FAILURE TO GRANT A NEW TRIAL

In point of error twenty-one, Parker asserts the trial court erred in failing to grant a new trial because the judgment was excessive and shocking. Shaw counters by claiming that Parker failed to timely file his motion for a new trial.[16] Regardless of whether the motion for a new trial was timely filed, we find the award to Shaw was neither excessive nor shocking based on the evidence of this case. We overrule point of error twenty-one.

## TRIAL COURT'S IMPOSITION OF LIENS

In point of error twenty-two, Parker claims the trial court erred in its imposition

---

**15.** Neither the appellate attorney fees, the lost past and future alimony award, nor the imposition of liens against Parker's separate property affected the trial court's division of the community estate. See point of error twenty-two for our discussion on the imposition of liens.

**16.** Shaw claims that she believes Parker failed to timely file the motion for a new trial because the trial judge signed the judgment on October 12, 1993, but Parker did not file a motion for a new trial until November 15, 1993.

of liens on Parker's separate real property and on the assets of Share. The trial judge imposed a lien against all the land, buildings, furniture, and fixtures owned by or awarded to Parker, Foundation, and Share to secure the judgments granted to Shaw. These equitable liens applied to all of Parker's property, including his separate real property. Furthermore, it applied to all the assets of Share. Therefore, we must determine whether the liens against Share applied to any separate real property of Parker held by Share.

Share became part of the property division through the application of the alter ego doctrine.[17] Because the alter ego doctrine applied to Share, the trial court could properly characterize some of Share's assets as part of the community estate. *Vallone v. Vallone,* 644 S.W.2d 455, 458 (Tex.1982); *Zisblatt,* 693 S.W.2d at 952. For example, assets that came into Share during the time of marriage would generally be characterized as community property. *See Zisblatt,* 693 S.W.2d at 955. Property, however, in Share before the time of marriage would generally constitute separate property.

Here, the evidence shows that Share acquired all its real property, other than the Jones Street property, during the marriage of Shaw and Parker. Because of the application of the alter ego doctrine, the Jones Street property held by Share would be Parker's separate property, and the remaining real property in Share would be community property. Therefore, the trial court placed an equitable lien on Parker's separate real property held individually and by Share.

According to the Texas Supreme Court:

When dividing marital property on divorce, trial courts may impose equitable liens on one spouse's *separate real property* to secure the other spouse's right of reimbursement for community improvements to that property.... *Although courts may impress equitable liens on separate real property to secure reimbursement rights,* *they may not impress such liens, absent any compensable reimbursement interest, simply to ensure a just and right division.*

*Heggen v. Pemelton,* 836 S.W.2d 145, 146 (Tex.1992) (emphasis added). Based on this language, unless the trial court's award includes a reimbursement claim against a particular piece of separate real property, then the trial court cannot place an equitable lien against that separate real property to support its property division in a divorce case.

The trial judge's award here does not include any reimbursement claims against Parker's separate real property held individually or by Share. Therefore, the trial court erred by placing an equitable lien on Parker's separate real property. We sustain point of error twenty-two. We reverse and modify the trial court's judgment to exclude any liens against Parker's separate real property held individually or by Share.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Finally, in point of error twenty-four, Parker asserts the trial court erred in making certain findings of fact and conclusions of law because there was insufficient evidence to support the findings or conclusions. Parker argues this particular point of error in conjunction with points of error one through twenty-two. Therefore, to the extent the trial court's findings of fact and conclusions of law address the portions of the judgment we reversed, we sustain point of error twenty-four. To the extent, however, that we affirmed the judgment of the trial court, sufficient evidence existed to support the trial court's findings as discussed above. Therefore, we sustain in part and overrule in part point of error twenty-four.

## CONCLUSION

We reverse and modify in part, reverse and remand in part, and affirm in part the trial court's judgment. We reverse and mod-

---

17. We previously held the trial court properly applied the alter ego doctrine in this case.

ify the trial court's judgment to exclude the award of $633,153 for lost past and future contractual alimony. We also reverse and modify the trial court's judgment to exclude the liens against Parker's separate property held individually and by Share. Furthermore, we reverse and remand the trial court's unconditional award of appellate attorney fees. We affirm the remainder of the trial court's judgment.